**THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| CHANT'E RAGSDALE,<br><br>                                    Plaintiff,<br>v.<br><br>SPRINT/UNITED MANAGEMENT COMPANY<br><br>  **Serve**: Corporation Service Company<br>            2900 SW Wanamaker Drive, Suite 204<br>            Topeka, KS 66614<br><br>                                    Defendant. | **Case No.**<br><br>**JURY TRIAL REQUESTED** |

**COMPLAINT**

Plaintiff Chant'e Ragsdale states her causes of action against Defendant Sprint as follows:

1. This is an action for discrimination, retaliation, and wrongful discharge based on Plaintiff's race, as a result of her claims of discrimination. Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Plaintiff also brings claims under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et. seq.* (FMLA).

2. Plaintiff, an African American female, worked for Sprint as a Telesales Representative until her termination on February 4, 2020.

3. During her tenure at Sprint, Plaintiff noticed that non-African American employees received privileges and benefits she and other African American employees were denied. She complained about the disparate treatment and was terminated for an offense for which other non-African American employees were not terminated.

4. Plaintiff also took approved leave pursuant to the FMLA and was terminated approximately one month after her return from leave after management denied her additional training.

5. Plaintiff seeks all available legal and equitable remedies for discrimination and retaliation, including, back pay, front pay, compensatory damages, punitive damages, and attorneys' fees.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under 28 U.S.C. § 1343, which provides for original jurisdiction in this Court for suits brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and for suits under the FMLA, and by 28 U.S.C. § 1331, which provides original jurisdiction in this Court for suits arising under federal law; and with respect to Title VII, by 42 U.S. C. § 2000e-5(f)(3).

7. Plaintiff seeks all available legal and equitable remedies for claims under Title VII, §1981, and the FMLA including, back pay, front pay, compensatory damages, punitive damages, and attorneys' fees.

8. Venue is proper in the United States District Court for the District of Kansas under 28 U.S.C. § 1391(b)(2), because the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

9. At all times relevant to this lawsuit, Plaintiff Chant'e Ragsdale was a resident of Independence, Missouri and a citizen of the State of Missouri.

10. Defendant Sprint/United Management Company is a Kansas for profit corporation and is an employer within the meaning of Title VII.

## ADMINISTRATIVE PROCEEDINGS

11. On or about May 15, 2020, Ms. Ragsdale filed a timely charge of discrimination against Sprint with the EEOC. A copy of Ms. Ragsdale's charge is attached as Exhibit A.

12. On or about August 12, 2020, the EEOC mailed a notice of right to sue pursuant to Title VII to Ms. Ragsdale, and she received it thereafter. A copy of the Right to Sue Notice is attached as Exhibit B.

13. This action has been filed with this Court within 90 days of Ms. Ragsdale's receipt of the right-to-sue notice of from the EEOC. Ms. Ragsdale has fully complied with all administrative prerequisites before filing this action.

## FACTUAL BACKGROUND

14. Plaintiff Chant'e Ragsdale worked for Sprint as a Telesales Representative from approximately March 1, 2018 until her termination on February 4, 2020.

15. As a Telesales Representative, Plaintiff's primary duty was to answer calls from prospective customers and sell them Sprint phone plans. In the context of that primary duty, Plaintiff was expected to be familiar with all services, packages, and promotions Defendant was offering. The packages and promotions changed from time to time.

15. Prior to her termination, Plaintiff had received positive performance reviews and consistently met her performance metric goals.

16. In or about August and September 2019, Plaintiff complained to Inetta Walker, her immediate supervisor, that she had witnessed disparate treatment for African American employees (including herself) in comparison to non-African American ones. Plaintiff identified the following instances of disparate treatment as examples of what she had witnessed:

- White and Hispanic employees were given the "gravy" queue if they failed to meet their sales metrics, while African American employees were given the

3

   harder queues, which resulted in lower sales and termination for failure to meet goals;

- White and Hispanic employees hung up on customers, placed them on hold for lengthy periods of time, avoided calls, and committed other conduct and/or performance infractions, but were not disciplined at all or as severely as African American employees;

- Quality Assurance reviews caught at least one white and Hispanic employee adding unauthorized charges to phone bill ("cramming") and using fraudulent tactics to switch customers from one service to another ("slamming"), but she was not disciplined.

17. In November and December 2019, Plaintiff was on intermittent leave pursuant to the Family and Medical Leave Act. She essentially worked one day per week during that time.

18. Plaintiff returned to work full-time in early January 2020.

19. Upon her return, Plaintiff realized that there were new promotions and sales packages and requested training for the new promotions and sales packages so that she was familiar with them and understood them.

20. Plaintiff requested training from more than one supervisor, but she was consistently rebuffed and told that the Telesales team was too busy to train and that they were in "AHOD," (All Hands of Deck) mode.

21. In January 2020, Plaintiff took a call from a customer who was inquiring about upgrading his phone. The customer had previously received incorrect information from a sales associate with whom he had previously spoken at a Sprint retail store.

22. In the context of speaking with the customer, Plaintiff inadvertently provided false information to the customer. She corrected her error before any services were ordered and before any money changed hands. Nevertheless, the customer became irate and requested to speak with Plaintiff's supervisor. The customer then spoke with a series of supervisors, none of whom provided any resolution and at least one of whom hung up on the customer and did not call him back.

23. Part of Plaintiff's mistake was the result of not having adequate familiarity with the new promotions because management refused to train her on the promotions following her return from FMLA leave.

24. Following the incident, Plaintiff spoke with her supervisor, who assured her that her mistake would result in only a coaching and nothing more severe.

25. Nevertheless, when Plaintiff's supervisor was on leave, Plaintiff was terminated ostensibly for having improperly handled the call with the irate customer, and for having misused the NBA (Next Best Action).

26. On information and belief, non-African American employees had misused the NBA and they were not terminated for the offense.

27. The irate customer referenced having spoken with numerous Sprint employees, not just Plaintiff. Further, he described at least one (white) supervisor hanging up on him, and he noted that none of the supervisors had been helpful.

28. On information and belief, only Plaintiff was terminated as a result of the incident with the irate customer.

## COUNT I
## DISCRIMINATION ON THE BASIS OF RACE (TITLE VII)

29. Plaintiff is an African American female.

30. Plaintiff worked for Sprint as a Telesales Representative from March 2018 through her termination on February 4, 2020.

31. Plaintiff was ostensibly terminated for an offense for which other, non-African American employees were not terminated.

32. Other non-African American employees enjoyed privileges and rights denied to Plaintiff and other African American employees. Plaintiff's race and color were motivating and/or determining factors in Defendant's intentional decision to discriminate against her in the terms and conditions of her employment, including, subjecting her to disparate treatment and wrongful termination.

33. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendant and Defendant's agents during the course of her employment with Defendant, based on her race, in violation of Section 703(a) if Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) .

34. As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

35. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

36. As shown by the foregoing, Defendant engaged in these discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff. Plaintiff is

therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

37. Plaintiff is entitled to recover from Defendant reasonable attorneys' fees, as provided in Section 706(k) of Title VII, 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff Chant'e Ragsdale asks that the Court enter judgment in her favor, finding that she has been subjected to unlawful discrimination; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases, and other benefits, including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages under Title VII in a reasonable amount to be determined by the jury; for her costs expended; for her reasonable attorneys' and expert's fees; and for such other relief as this Court deems just and proper.

## COUNT II
## RETALIATION (TITLE VII)

38. Plaintiff's complaints of discrimination to her supervisor constituted a protected action within the meaning of Title VII, 42 U.S.C. § 2000e-3(a).

39. Plaintiff's opposition to the discrimination she alleged was reasonable and unambiguous.

40. After and because of her opposition to unlawful discrimination in the workplace, Plaintiff was terminated for false reasons.

41. Defendant unlawfully terminated Plaintiff in retaliation for her protected activity. Defendant knowingly used false pretextual reasons to mask its unlawful retaliation. Defendant's conduct violated Plaintiff's rights under Title VII, 42 U.S.C. § 2000e-3(a), and was undertaken willfully and maliciously so as to support an award of punitive damages.

WHEREFORE, Plaintiff Chant'e Ragsdale asks that the Court enter judgment in her favor, finding that she has been subjected to unlawful discrimination; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases, and other benefits, including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages under Title VII in a reasonable amount to be determined by the jury; for his costs expended; for his reasonable attorneys' and expert's fees; and for such other relief as this Court deems just and proper.

## COUNT III
## DISCRIMINATION ON THE BASIS OF RACE (SECTION 1981)

42. Plaintiff's race was a "but for" and/or motivating cause in Defendant's intentional decisions to discriminate against her in the terms and conditions of her employment, including, but not limited to, disparate treatment and termination.

43. Defendant knew or should have known of the unwelcome race discrimination of their employees, including Plaintiff.

44. Defendant failed to take prompt and appropriate corrective action to end the race discrimination of its employees, including Plaintiff.

45. Defendant failed to make good-faith efforts to enforce its policies to prevent race discrimination of their African American employees, including Plaintiff.

46. During Plaintiff's employment with Defendant, she and similarly situated employees were subjected to an ongoing pattern and practice of discrimination in the terms and conditions of their employment, including, but not limited to disparate treatment and termination.

47. As shown by the foregoing, Defendant's conduct was outrageous and it either acted with malice or with recklessness. Plaintiff is therefore entitled to an award of punitive

damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

48. As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

49. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

WHEREFORE, Plaintiff Chant'e Ragsdale asks that the Court enter judgment in her favor, finding that she has been subjected to unlawful discrimination; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases, and other benefits, including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages under Section 1981 in a reasonable amount to be determined by the jury; for her costs expended; for her reasonable attorneys' and expert's fees pursuant to Section 1988; and for such other relief as this Court deems just and proper.

## COUNT IV
## RETALIATION (SECTION 1981)

50. Plaintiff had a good faith reasonable belief that Defendant was engaged in unlawful employment practices and violations of federal civil rights law as set forth above, including race discrimination.

51. Plaintiff's opposition to the discrimination she alleged was reasonable and unambiguous.

52. After and because of her opposition to unlawful discrimination in the workplace, Plaintiff was terminated for false reasons.

53. Defendant unlawfully terminated Plaintiff in retaliation for her protected activity. Defendant knowingly used false pretextual reasons to mask its unlawful retaliation. Defendant's conduct violated Plaintiff's rights under Section 1981, and was undertaken willfully and maliciously so as to support an award of punitive damages.

WHEREFORE, Plaintiff Chant'e Ragsdale asks that the Court enter judgment in her favor, finding that she has been subjected to unlawful discrimination; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases, and other benefits, including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages under Section 1981 in a reasonable amount to be determined by the jury; for his costs expended; for his reasonable attorneys' and expert's fees; and for such other relief as this Court deems just and proper.

## COUNT V
## FMLA RETALIATION

54. For purposes of the FMLA, Plaintiff was employed by Defendant, and Plaintiff was entitled to leave under the FMLA for a serious health condition.

55. Plaintiff in good faith exercised her rights with Defendant under the FMLA to request leave for a qualifying serious health condition.

41. Defendant terminated Plaintiff shortly after her return from leave under the FMLA and denied her training to which she was entitled.

42. Plaintiff's exercise of her rights under the FMLA was a motivating and/or determining factor in Defendant's management of and ultimate decision to terminate Plaintiff's employment.

43. Defendant's actions were willful, outrageous, and done with reckless indifference to Plaintiff's rights under the FMLA.

44. Defendant failed to make good faith efforts to enforce its policies to prevent retaliation against its employees, including Plaintiff.

45. As a direct and proximate result of Defendant's action and/or inaction, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

46. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

47. Defendant's conduct was not undertaken in good faith or with the reasonable belief that its actions were in compliance with the FMLA. Plaintiff is therefore entitled to an equal amount as liquidated damages and other equitable relief.

48. Plaintiff is also entitled to recover all of her costs, expenses, and fees incurred in this matter.

**WHEREFORE**, Plaintiff Chant'e Ragsdale prays for judgment against Defendant on Count III, for a finding that she has been subjected to unlawful retaliation prohibited by the FMLA; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest, for an award of front pay in a reasonable amount; for an award of compensatory and liquidated damages; equitable relief including reinstatement; for her costs expended and for reasonable attorney's fees and for such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Chant'e Ragsdale hereby requests a trial by jury on all claims in her Complaint that may properly be submitted to a jury.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial of this matter.

Respectfully submitted,

**DUGAN SCHLOZMAN LLC**

 /s/ *Mark V. Dugan*
Heather J. Schlozman, KS Bar # 23869
Mark V. Dugan, KS Bar # 23897
heather@duganschlozman.com
mark@duganschlozman.com
8826 Santa Fe Drive, Suite 307
Overland Park, Kansas 66212
Telephone:  (913) 322-3528
Facsimile:   (913) 904-0213

**Counsel for Plaintiff**

12